**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| **ROBERT D. NICHOLSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | **Case No. 07-2150** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
| **Defendant.** ) | |

# REPORT AND RECOMMENDATION

In March 2007, Administrative Law Judge (hereinafter "ALJ") Peter Caras denied Plaintiff Robert Dean Nicholson's application for disability insurance benefits (hereinafter "DIB"). The ALJ based his decision on a finding that Plaintiff was able to perform a number of jobs existing in the national economy.

In September 2007, Plaintiff filed a Complaint (#4) against Defendant Michael J. Astrue, Commissioner of Social Security (hereinafter "Commissioner"), seeking judicial review of the ALJ's decision to deny social security benefits. In December 2007, Plaintiff filed a Motion for Summary Judgment or Remand (#13). In January 2008, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#15). In February 2008, Plaintiff filed a Reply Brief (#18). After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand **(#13)** be **DENIED.**

### I.  Background
### A.  Procedural Background

Plaintiff filed an application for DIB in March 2004, alleging disability beginning January 1, 2001. The claims were denied initially in September 2004 and upon reconsideration in November 2004. Plaintiff filed a written request for a hearing, and ALJ Caras held a hearing in March 2007. In March 2007, the ALJ issued a decision finding that Plaintiff was not entitled

to benefits. In May 2007, the Appeals Council denied Plaintiff's request for review. Pursuant to 42 U.S.C. § 405(g), Plaintiff now seeks judicial review of the final administrative decision of the Commissioner of Social Security denying his claims for benefits.

### B. Plaintiff's Background

Plaintiff was forty-eight years old on his alleged onset date and fifty at the time of the ALJ's decision. (R. 73.) He is married with one adult child, stands five feet eleven inches tall, and weighs approximately 250 pounds. (R. 168.) Plaintiff has nine years of education, never obtained his GED, and has no other formal education or vocational training. (R. 38, 208.) His past relevant work includes work with livestock and labor jobs. (R. 88.) Plaintiff's work with livestock is classified as light work and his work as a laborer was medium level work. (R. 88-92, 162.) Plaintiff has been unemployed since January 2004. (R. 167.)

### C. Plaintiff's Condition

Plaintiff had back surgery in 1983 following a heavy lifting episode, and again in 1987 after a slip and fall. (R. 167.) Plaintiff takes prescription medication including Tramadol HCL, Cyclobenzaprine, Toprol XL, and Cymbalta. (R. 154, 160.)

In December 2003, Plaintiff went to Paris Community Hospital's emergency room complaining of chronic lower back pain that was "mild," "burning," "sharp," and "radiating." (R. 181-82.) During straight leg testing, Plaintiff exhibited pain at ninety degrees with the right leg, but he otherwise exhibited painless full range of motion in his neck, back, and extremities. (R. 182.) He exhibited no apparent motor or sensory deficits. (R. 182.) The treating doctor instructed Plaintiff to follow up with Dr. Bert Akerman, Plaintiff's primary physician, and prescribed Flexeril, a muscle relaxant, and Ultram, pain medication, as needed. (R. 186.)

In August 2004, Dr. George Gindi examined Plaintiff at the request of the agency. During this examination, Plaintiff told Dr. Gindi that his pain was so severe that he could not work; he rated the pain at 7/10. (R. 167.) Plaintiff also told Dr. Gindi that the pain increased to 9 or 10/10 after walking one block and that he had to rest twenty minutes before starting to walk

again. (R. 167.) In his report, Dr. Gindi observed that Plaintiff was "able to move and ambulate without any assistance and without using any assistant device and with normal gait, he [had] some difficulty getting off the examination table." (R. 168.) Plaintiff had a good range of motion in his hands, wrists, elbows, shoulders, spine, hips, knees, and ankles. (R. 169.) Dr. Gindi also observed that Plaintiff had a scar on his lower back with tenderness around that area. (R. 169.) Plaintiff had normal muscle bulk and tone and exhibited no weakness, paralysis, or gait abnormalities. (R. 169.)

In August 2004, Dr. Stanley Burris reviewed the medical evidence in Plaintiff's file, which included Dr. Gindi's report, to complete a Physical Residual Functional Capacity (hereinafter "RFC") Assessment. Dr. Burris found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand or walk about six hours in an eight-hour workday; and sit with normal breaks for six hours in an eight-hour workday. (R. 173.) Dr. Burris found that Plaintiff could frequently climb, balance, kneel, crouch, and crawl, and occasionally stoop. (R. 174.) Plaintiff had no manipulative, visual, communicative, or environmental limitations. (R. 175-76.) Dr. Burris concluded that Plaintiff was capable of light work activity. (R. 179.) In October 2004, Dr. E.C. Bone affirmed Dr. Burris' assessment. (R. 171.)

In January 2007, Dr. Akerman conducted a Medical Assessment of Ability To Do Work-Related Activities. Dr. Akerman found that Plaintiff could frequently lift up to ten pounds and could occasionally carry up to ten pounds but never more than that. (R. 197.) Plaintiff could sit, stand, and walk for one hour at a time or for a total of one hour each during an eight-hour workday. (R. 198.) Dr. Akerman based this assessment on Plaintiff's "history of lumbar disc disease with two surgeries last fifteen years ago" and severe chronic pain. (R. 198.) He opined that Plaintiff could not do simple grasping or fine manipulation with either hand but he could use his right foot frequently and his left foot occasionally. (R. 198.) Due to his limited flexion and extension, Plaintiff could never climb, stoop, or crouch, but could occasionally balance, kneel, and crawl. (R. 199.) Plaintiff could continuously reach, handle, hear, and speak but could only occasionally feel and never push or pull. (R. 199.) Dr. Akerman indicated that Plaintiff should avoid heights, moving machinery, chemicals, and humidity. (R. 200.) Dr. Akerman stated that

Plaintiff's chronic back pain, lumbar disc disease, and right sciatica support his assessment. (R. 200.)  He noted that Plaintiff has chronic depression secondary to the impairments listed above.  (R. 200.)

### D.  The Hearing Before the ALJ

The ALJ held a hearing in March 2007, during which Plaintiff and Dr. James Lanier, a vocational expert (hereinafter "VE"), testified.

Plaintiff testified that on a typical day, he wakes up around 3:30 or 4:30 a.m. because he is in pain.  (R. 210.)  He testified that he just dozes throughout the night.  (R. 210.)  His wife sometimes has to help him get dressed, and he keeps his shoes tied so he just slip them on. (R. 213.)  During a typical day, Plaintiff watches television and moves from room to room. (R. 210.)  His wife usually fixes his breakfast and dinner, and his son helps him when his wife is at work.  (R. 210.)

Plaintiff testified that he can read and write but not very well.  (R. 207.)  He completed his freshman year of high school and never got his GED.  (R. 208.)  He likes to hunt and fish, but testified that he can no longer do those activities.  (R. 208.)  Plaintiff had previously worked mostly manufacturing jobs.  (R. 208.)  Plaintiff does few chores around the house and cannot stand long enough to do any cooking.  (R. 209.)  He seldom goes to the grocery store, and when he does go, it is with his wife or it is to get something like bread.  (R. 209.)

Plaintiff testified that he has a driver's license and drives about three times per week, but he is nervous about driving because he is afraid that he will not be able to engage the brake if needed.  (R. 206.)  He also testified that his legs and hips hurt if he drives for a while.  (R. 206-07.)  He does not take public transportation and depends on his wife to take him where he needs to go.  (R. 207.)  Plaintiff testified that he does not go to church very often because the seats are too hard so he cannot sit for very long.  (R. 207.)  He testified that he recently went to the movie theater with his son but he had to leave after thirty-five minutes because it was too painful for him to sit.  (R. 208-09.)

Plaintiff testified that he can stand or sit in a regular chair or walk for only fifteen minutes before the pain starts to affect him. (R. 204.) In terms of city blocks, Plaintiff can walk half a block before he has to come back because his legs begin to hurt. (R. 204-05.) He cannot bend over very well or stoop. (R. 205.) He can climb five or six stairs but needs support or somebody with him. (R. 206.) He cannot carry more than a maximum of ten pounds and does not carry anything during the course of a regular day. (R. 205.) Plaintiff testified that he cannot push or pull any weight. (R. 205.) When he uses the phone or does any work in the kitchen, his hands and arms ache and become numb. (R. 205.)

Plaintiff testified that he has been taking Tramadol and Cymbalta for eight months to a year. (R. 211.) He takes Tramadol every day and Cymbalta as needed. (R. 211.) Plaintiff testified that he takes Cymbalta when he gets "depressed and real down," and that it has been a couple of months since he has taken it. (R. 211.) He has not seen a psychiatrist or psychologist nor has his doctor referred him to one. (R. 211-12.) Plaintiff testified that he sees Dr. Akerman whenever he has "pains or any problems" and that it had been about a month and a half since he refilled his prescriptions. (R. 213.) Plaintiff testified that he uses a breathing machine at home and has a walker at home. (R. 212.) He testified that the walker was not prescribed for him. (R. 212.) Plaintiff testified that he does not have any problems or any side effects associated with his medications. (R. 213.)

At the beginning of the VE's testimony, the ALJ instructed him to point out if his testimony conflicted with the DOT or any relevant labor manuals. (R. 214.) The ALJ asked the VE to consider someone with Plaintiff's age and educational background who was limited to light unskilled work including two-step operations with occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no ladders, ropes, or scaffolds; and no concentrated exposure to unprotected heights, unprotected hazards, and machinery. (R. 214.) The VE testified that such a person could perform the jobs of a food prep worker, fast-food worker, cafeteria attendant, kitchen helper, and janitor. (R. 214.) The VE testified that there were more jobs available. (R. 214.) When asked if limitations on simple grasping or fine manipulation skills in hands and fingers would change the availability of listed jobs, the VE testified that the

jobs listed involved gross work. (R. 215.) He testified that these jobs would be standard shift jobs with a break for lunch and maybe one break in the morning and afternoon. (R. 215.) The VE testified that if the hypothetical person had to take frequent breaks that exceeded standard breaks, all of the jobs would be eliminated. (R. 215-16.) The VE testified that if the hypothetical individual could only occasionally carry up to ten pounds, then that person would be limited to sedentary work, which did not include any of the listed jobs. (R. 216.)

### E.  The ALJ's Decision

The SSA defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis. 20 C.F.R. § 416.920(a-f). At each step, if the ALJ affirmatively finds the claimant disabled or not disabled, the inquiry ends, but if no determination can be made, the Commissioner proceeds to the next step. 20 C.F.R. § 416.920(a)(4). If the claimant is currently employed or was previously employed during the relevant period, he is not disabled. 20 C.F.R. § 416.920(a)(4)(i). The second question is whether the claimant has a severe medical impairment that will last at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment, the inquiry ends. *Id*. However, if the claimant has a severe impairment, the third step is to ask whether the severe impairment meets or equals one listed in Appendix 1 to subpart P of part 404 of Chapter 20. 20 C.F.R. § 416.920(a)(4)(iii). If it does, the claimant is disabled. *Id*. If it does not, the fourth question is whether the claimant is able to perform his past relevant work with his current impairment. 20 C.F.R. § 416.920(a)(4)(iv). If he can, then he is not disabled. *Id*. If he is not able to perform his past work, the fifth and final question is whether, with his current limitations, he can perform other work which exists in significant numbers in the national economy. 20 C.F.R. § 416.920(c)(1).

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (R. 12.) Plaintiff has a combination of severe impairments including back disorder and depression. (R. 12.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" in Listing 1.04 or Listing 12.04. (R. 12.) The ALJ determined that Plaintiff had the RFC to "perform light work activity, with the ability to lift [or] carry up to ten pounds frequently, twenty pounds occasionally; and the ability to stand [or] walk up to six hours in an eight-hour period." (R. 14.) The ALJ limited Plaintiff to work involving only occasional climbing, stooping, balancing, kneeling, crouching, and crawling, and no climbing ladders, ropes, or scaffolds. (R. 14.) The ALJ also limited Plaintiff to work involving no exposure to unprotected hazards, machinery, or unprotected heights. (R. 14.) The ALJ further limited Plaintiff to tasks consisting of two-step operations. (R. 14.)

Next, the ALJ found that Plaintiff is unable to perform any of his past relevant work. (R. 16.) However, based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform several jobs that exist in significant numbers in the national economy. (R. 17-18.) Therefore, the ALJ determined that Plaintiff has not been under a disability, as defined in the Social Security Act, from his alleged onset date through the date of the ALJ's decision. (R. 19.)

## II.  Standard of Review

The ALJ's decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. New York*, 305 U.S. 197 (1938)). Where conflicting evidence may allow reasonable minds to differ as to whether a claimant is disabled, the responsibility for making that

determination rests with the ALJ. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996); *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Therefore, the question for review is not whether the claimant is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability. *Id*. The Court defers to the ALJ's credibility determinations, "so long as they find some support in the record." *Edwards v. Sullivan*, 985 F.2d 334, 388 (7th Cir. 1993).

### III. Discussion

Plaintiff argues that this case should be reversed or remanded because it contains errors of law and the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ (1) made an improper credibility determination; (2) failed to properly develop the evidence; (3) failed to properly weigh the evidence; and (4) made an erroneous step five determination.

#### A. The ALJ's Credibility Determination

Plaintiff argues that the ALJ erred when he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely credible. He raises several different arguments and contends that his statements of disabling symptoms and limitations need only be reasonably related to his medically determinable impairments to be found credible. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

First, Plaintiff contends that the ALJ failed to provide adequate reasoning for his conclusion that Plaintiff is not entirely credible. The Commissioner responded that the ALJ reasonably found that Plaintiff's allegations were not fully credible and that Plaintiff has not shown that the ALJ's credibility finding was patently wrong.

In a recent decision, the Seventh Circuit Court held that "only when the ALJ's determination lacks any explanation or support . . . [will we] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2001)). Moreover, the court "merely examine[s] whether the ALJ's determination was

reasoned and supported." *Id.* at 213 (citing *Jens*, 347 F.3d at 213-14).  In this case, the ALJ sufficiently explained his credibility finding, as discussed below.

Next, Plaintiff argues that the ALJ should have considered the "significant side-effects" of his medications.  (#14, p. 10.)  In support, Plaintiff refers only to an April 2004 Disability Report, in which Plaintiff stated that his medications made him sleepy.  (R. 154.)  This is apparently the only reference to side effects in the record.  At the hearing, Plaintiff testified that he had no side effects that he could identify.  (R. 213.)  Based on the cited evidence and Plaintiff's testimony, the Court cannot conclude that the ALJ erred when he failed to discuss side effects.

Next, Plaintiff argues that "the ALJ merely played lip service to SSR 96-7p."  (#14, p. 9.) Plaintiff contends that the ALJ cannot simply recite the factors described in the regulations or state that he has considered them.  The Court disagrees with this characterization of the ALJ's credibility assessment.  Although the ALJ did list the relevant factors, he followed that with a discussion of his reasoning and the evidence on which he relied.  (*See* R. 14-15.)

Plaintiff also contends that the ALJ erred when he discredited Plaintiff's mental impairments and that the ALJ made his own medical decision that Plaintiff did not suffer from depression.  Plaintiff contends that the ALJ cannot use Plaintiff's failure to seek treatment as evidence that he is not depressed.  As an initial matter, the Court finds that the ALJ did not conclude that Plaintiff was not depressed; the decision explicitly acknowledges that Plaintiff suffers from depression.  (R. 12 (stating "there is medically documented indication of persistence of a depressive syndrome in the objective medical record").)  A review of the decision shows that the ALJ considered Plaintiff's depression, but found that it did not meet or equal the criteria in Listing 12.04.  (R. 12-13.)  The ALJ noted that the medical record contained no diagnosis of depression and no evidence of treatment, counseling, or medication for any mental symptoms and found that Plaintiff had no functional limitations due to his depression.  Plaintiff's brief does not cite any evidence that disputes this statement, although the Court notes that Plaintiff takes Cymbalta as needed.

9

To support his contention that the ALJ erred by ignoring Plaintiff's depression, Plaintiff relies on *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989), in which the court held that a failure to seek mental health treatment may be the result of mental illness rather than evidence that a mental impairment is not severe. However, Plaintiff testified at the hearing that he takes Cymbalta only when he is "depressed and real down," and that it has been a couple of months since he has taken it. (R. 211.) In addition, Plaintiff testified that he has not seen a psychiatrist or psychologist nor has his doctor referred him to one. (R. 211-12.) Thus, Plaintiff's own testimony supported the ALJ's conclusion that Plaintiff's depression was not debilitating. Based on the record in this case, the Court concludes that the ALJ did not err when he determined that Plaintiff had no functional limitations based on his depression.

Plaintiff also argues that the ALJ erred by failing to consider (1) Plaintiff's inability to sit through the hearing due to back and leg pain, and (2) his December 2003 emergency room visit. The Court notes it must defer to an ALJ's credibility assessment when the assessment is based on subjective considerations such as an ALJ's observations at trial. *See Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994) (reviewing courts have greater flexibility to review a credibility determination when it rests on objective factors or fundamental implausibilities rather than on the ALJ's subjective observations). In light of this deferential standard of review when subjective considerations are at issue, the Court finds unpersuasive Plaintiff's argument regarding his purported inability to sit through the hearing.

The record regarding Plaintiff's December 2003 emergency room visit was part of Plaintiff's outpatient records from Paris Community Hospital for the period from February 2000 to December 2004. (R. 180-94.) The record shows that, in December 2003, Plaintiff was treated for chronic back pain and he reported that he had previously had similar symptoms. He described his pain as burning, sharp, radiating, and mild. (R. 181.) The doctor prescribed Ultram and Flexeril and instructed Plaintiff to follow up with his primary care doctor. (R. 186.) The record contains no information regarding a follow-up appointment, and Plaintiff's hearing testimony indicates that he is no longer taking those medications.

Based on the medical record, this was an isolated incident.  The ALJ did not dispute that Plaintiff has ongoing back pain which, along with depression, constituted the basis for Plaintiff's claim of disability.  The ALJ's decision acknowledged that Plaintiff had both conditions.  The ALJ also acknowledged Plaintiff's testimony regarding his functional limitations.  An ALJ is not required to list and evaluate the merits of every single piece of evidence.  *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995).  After reviewing the decision in light of the medical record, the Court cannot conclude that the ALJ erred by failing to expressly discuss this emergency room visit.

Finally, Plaintiff addresses the overall substance of the credibility determination, arguing that (1) the ALJ failed to consider Plaintiff's complaints of pain even though the ALJ acknowledged that Plaintiff had medically determinable back impairments that could reasonably be expected to produce the alleged symptoms; and (2) the ALJ erroneously stated that the objective medical record did not support Plaintiff's allegations of disabling symptoms.

Under Social Security Ruling 96-7p, the ALJ's credibility assessment "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.  If a claimant's allegations of pain are not supported by objective medical evidence in the record and the claimant indicates that pain is a significant factor of his alleged inability to work, then the ALJ must obtain detailed descriptions of the claimant's daily activities by asking about the pain and its effects to the claimant.  *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). He must investigate all relevant information, including prior work and observations by treating physicians, examining physicians, and third parties.  *Id.*  The ALJ must consider the nature and intensity of the alleged claimant's pain, precipitating and aggravating factors, dosage and effectiveness of any pain medications, other treatment for the relief of pain, functional restrictions, and the claimant's daily activities.  *Id*.  Where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations.  *Id.*

Here, the ALJ acknowledged Plaintiff's testimony regarding his claims of pain, functional limitations, and activities of daily living. He referred to the medical record, including Dr. Gindi's August 2004 report and the October 2004 state agency evaluation, to explain why he did not believe Plaintiff's reported limitations and his allegations of severe pain. He noted that Dr. Gindi had observed that Plaintiff had a good range of motion in his extremities, no difficulty moving and ambulating without assistance, and no weakness, paralysis, or gait abnormalities. In the state agency evaluation, Dr. Burris concluded that Plaintiff could engage in light work with some postural limitations. The ALJ also discussed Dr. Akerman's January 2007 report and explained why he did not accept the conclusions in that report. The ALJ noted that Plaintiff was not seeing a doctor on a regular basis and only went to the doctor when he had particular problems or to get his prescriptions refilled. In *Sienkiewicz v. Barnhart*, the Seventh Circuit Court held that the claimant's "repeated failure . . . to seek medical treatment provides support for the ALJ's credibility finding." *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). In that case, the claimant sought treatment only seven times over a period of eight years for her headaches despite their alleged severity. Here, Plaintiff provided a record of only one instance of seeking treatment for back pain. Based on the medical record and the ALJ's explanation of his credibility finding, the Court cannot conclude that the ALJ erred by concluding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.

### B. Development of the Evidence

Next, Plaintiff argues that the ALJ failed to fairly and fully develop the evidence. Specifically, Plaintiff contends that the record was insufficient because the ALJ did not request testimony from a medical expert, request an updated psychiatric consultative exam, recontact Dr. Akerman for clarification of his functional assessment report, or inquire further about Plaintiff's depression.

In response, the Commissioner argues that Plaintiff bears the burden of proving he is disabled. The Commissioner also states that Plaintiff never asked for a medical consultation for

depression and never suggested that there were additional treatment records available. Finally, the Commissioner states that there is no requirement to have a medical expert present at the hearing. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("Here, the evidence was adequate for the ALJ to find Skarbek not disabled, and the ALJ acted within his discretion in deciding not to call a medical expert.").

> The Regulations state as follows:
>
> In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material, to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis.

20 C.F.R. § 404.1512(a). The Supreme Court has held that "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The Regulations state that the ALJ may recontact medical sources "[w]hen the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled." 20 C.F.R. § 404.1512(e).

Plaintiff was represented by counsel at the hearing. Elsewhere in this report, the Court addresses the ALJ's reasons for rejecting Dr. Akerman's report. Regarding Plaintiff's depression, the ALJ did not dispute that Plaintiff suffered from depression but found that it did not reach the level of Listing 12.04 and did not significantly limit Plaintiff's ability to work. Furthermore, Plaintiff's own testimony indicated that his depression was not debilitating: He testified that he takes Cymbalta as needed and that it has been a couple of months since he has taken it. He also testified that he has not seen a psychiatrist or psychologist nor has his doctor referred him to one. (R. 211-12.) When a claimant is represented by an attorney, the ALJ may

assume that the claimant "is making the strongest case for benefits." *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987). Based on the record in this case, the Court cannot conclude that the ALJ erred by failing to contact a medical expert or to develop the record further.

### C. Weighing of the Evidence

Next, Plaintiff argues that the ALJ improperly weighed the evidence when he disregarded Dr. Akerman's functional assessment of Plaintiff's postural limitations. Plaintiff also contends that when the ALJ determined Plaintiff's RFC, he failed to explain what evidence he used to reach this conclusion. Therefore, he failed to adequately connect the evidence to his conclusion, and he failed to explain how much weight he gave to the opinions of the state agency physicians and the consultative examiner, Dr. Gindi.

The Commissioner responds that the ALJ reasonably declined to give controlling or significant weight to Dr. Akerman's medical opinions because those opinions were unsupported and inconsistent with other medical evidence. (R. 15.) *See* 20 C.F.R. § 404.1527(d)(2) (stating that the ALJ will give controlling weight to the opinion of a treating physician if the issue of the nature and severity of a claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record).

In his decision, the ALJ stated that the medical record contained minimal or no support for Dr. Akerman's January 2007 opinions that Plaintiff had difficulty standing/walking/sitting lifting and using his hands and feet for grasping and manipulation. Specifically, the ALJ explained that no diagnostic testing indicated any severe problem with Plaintiff's back including no nerve encroachment, impingement, or radiculopathy with regard to Dr. Akerman's statements about grasping, fine or gross manipulations, weight restrictions, or postural difficulties. The ALJ also referred to reports from Dr. Gindi and the state agency evaluators that were inconsistent with Dr. Akerman's report. The ALJ expressly stated that the state agency evaluation was

consistent with the objective medical record and that he gave it "equal weight with the foregoing medical opinions" (referring to Dr. Gindi's report). (R. 15.)

Based on this reasoning, the Court concludes that the ALJ sufficiently explained his treatment of Dr. Akerman's report and the weight he gave to the various reports and evaluations. As Defendant noted, the Seventh Circuit has said that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

### D. The ALJ's Step Five Determination

Plaintiff next argues that the ALJ made an erroneous step five determination. Specifically, Plaintiff contends that the ALJ could not rely on the VE's testimony as substantial evidence because (1) the hypothetical posed to the VE was incomplete; and (2) the VE's testimony was inconsistent with the Dictionary of Occupational Titles (hereinafter "DOT").

First, Plaintiff contends that the ALJ's step five determination is not supported by substantial evidence because the hypothetical posed to the VE failed to include the need for frequent, unscheduled breaks due to back pain.

The Seventh Circuit has consistently held that the questions posed to the VE must incorporate all relevant limitations which the plaintiff suffers. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Here, the ALJ's RFC indicates that, although Plaintiff's physical limitations did limit his overall functioning, he did not need to take frequent, unscheduled breaks. The ALJ also determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely credible and, as discussed above, the Court concluded that this assessment did not constitute patent error. The Court previously discussed the ALJ's treatment of Dr. Akerman's January 2007 report and concluded that the ALJ adequately explained why he rejected the doctor's opinions. In the

absence of error regarding the ALJ's credibility assessment and weighing of the evidence, the Court cannot conclude that the ALJ erred by omitting a need for frequent breaks from his hypothetical question to the VE.

Second, Plaintiff argues that because the VE's testimony is not consistent with the DOT, the ALJ could not rely on it as substantial evidence. Plaintiff contends that asking the VE at the onset of questioning to identify inconsistencies does not satisfy an ALJ's burden pursuant to SSR 00-4p. In support, Plaintiff relies on *Harris v. Astrue*, No. 06-222, slip op. at 43-45 (N.D. Ind. Aug. 27, 2007).

The Commissioner responds that the ALJ satisfied SSR 00-4p. (#16, p. 21.) In addition, the Commissioner contends that, even if the DOT information is inconsistent with some of the jobs the VE mentioned, Plaintiff has not argued that all of the jobs the VE mentioned are inconsistent with the DOT.

SSR 00-4p provides that an ALJ who takes testimony from a VE about the requirements of a particular job has an affirmative duty to determine whether that testimony is consistent with the DOT. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). SSR 00-4p provides, in pertinent part, as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p.

Here, before questioning the VE, the ALJ stated to the VE, "[a]s always, point out if there are any conflicts with the DOT or any labor-relevant manuals." (R. 214.) After

considering Plaintiff's argument and the *Harris* case, the Court respectfully declines to follow the *Harris* court's reasoning and conclusion that an inquiry *prior to* the VE's testifying cannot satisfy an ALJ's duty under SSR 00-4p. Accordingly, the Court will not find that the ALJ failed to satisfy SSR 00-4p on that basis.

As noted above, SSR 00-4p states that when there is "an apparent unresolved conflict" between VE testimony and the DOT, the ALJ must "elicit a reasonable explanation for the conflict." SSR 00-4p. Thus, the ALJ must explain any conflict between the VE's testimony and the DOT only if the discrepancy was "identified" -- that is, if the claimant, or the ALJ on his behalf, noticed the conflict and asked for substantiation. *Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002). Raising a discrepancy between the VE's testimony and the DOT after the hearing is too late. *Id. See, e.g., Lembke v. Barnhart*, No. 06-C-0306-C, 2006 WL 3834104, *14-15 (W.D. Wis. Dec. 29, 2006).

Here, the VE did not identify any inconsistencies between his testimony and the DOT. Plaintiff's counsel had an opportunity at the hearing to cross-examine the expert regarding the classification of the jobs the VE cited, but did not do so. Seventh Circuit case law is clear that any inconsistency between the VE's testimony and the DOT must be identified at the hearing. *See Jurcevic v. Astrue*, 515 F. Supp. 2d 869, 879 (N.D. Ill. 2007) ("The Seventh Circuit has made clear, however, that with respect to the DOT, the ALJ is not required to resolve discrepancies between the VE's testimony and the DOT unless the discrepancy was made known at the hearing.") (citing *Donahue,* 279 F.3d at 446-47). Thus, notwithstanding Plaintiff's assertions in his memorandum and examples of conflicts between the VE's testimony and the DOT, the ALJ properly relied on the VE's testimony.

## IV. Summary

For the reasons set forth above, this Court recommends that Plaintiff's Motion for Summary Judgment or Remand **(#13)** be **DENIED**. The parties are advised that any objection to

this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objection on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

 ENTER this 27th day of August, 2008.

                   s/ DAVID G. BERNTHAL
                   U.S. MAGISTRATE JUDGE